IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND
CIVIL ACTION NO. 1:22-cv-304

| | | |
|---|---|---|
| DISABILITY RIGHTS RHODE ISLAND, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | PLAINTIFF'S FIRST AMENDED COMPLAINT |
| RICHARD CHAREST, in his official capacity as Director of THE RHODE ISLAND DEPARTMENT OF BEHAVIORAL HEALTHCARE, DEVELOPMENTAL DISABILITIES & HOSPITALS, | ) ) ) ) ) ) ) ) | |
| Defendant. | ) ) | |

## INTRODUCTION

1. Plaintiff, Disability Rights Rhode Island ("DRRI"), brings this action for declaratory and injunctive relief pursuant to the Protection and Advocacy for Individuals with Mental Illness ("PAIMI") Act, 42 U.S.C. §§ 10801 *et seq.*, the Developmental Disabilities Assistance and Bill of Rights Act ("the DD Act"), 42 U.S.C. §§ 15001 *et seq.*, and 42 U.S.C. § 1983. By this action, DRRI challenges the refusal of the defendant, Richard Charest, Director of the Rhode Island Department of Behavioral Healthcare, Developmental Disabilities & Hospitals ("BHDDH") to provide DRRI with records to which DRRI is legally entitled.

2. DRRI files this First Amended Complaint as a matter of course, within 21 days of service of the Complaint, pursuant to Fed. R. Civ. P. 15(a)(1)(A).

3. DRRI is the duly-designated state Protection and Advocacy System ("P&A") for individuals with disabilities. 42 U.S.C. §§ 10801(b) and 15043(a)(1)-(2). DRRI is entrusted,

empowered and obligated to protect the civil rights of individuals with disabilities in the state of Rhode Island. 29 U.S.C. § 794e(a)(1); 42 U.S.C. §§ 10801(b) and 15041.

4. As the state P&A, DRRI has the responsibility and authority to access records in the course of investigating allegations of abuse or neglect of individuals with disabilities. 42 U.S.C. §§ 10805, 10806, and 15043(I); R.I. Gen. Laws § 40.1-25-1.

5. The records to which DRRI is entitled access include records of the restraint committee and restraint reduction committee at Eleanor Slater Hospital, which is operated by BHDDH.

6. Defendant's refusal to produce the requested records prevents DRRI from fulfilling its statutory mandates of investigating allegations of abuse and neglect as well as providing protection and advocacy services for individuals with disabilities. By this action, DRRI seeks an order from this Court requiring Defendant to provide the requested information so that DRRI may discharge its statutory duties and investigate the alleged abuse and/or neglect of any individual with disabilities.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), which grant this Court original jurisdiction in all actions authorized by 42 U.S.C. § 1983 to redress the deprivation under color of State law of any rights, privileges, or immunities guaranteed by the United States Constitution and Acts of Congress. Plaintiff's federal claims are made pursuant to the PAIMI Act, 42 U.S.C. §§ 10801 *et seq.*, and the DD Act, 42 U.S.C. §§ 15001 *et seq*. Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202.

8. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b) as all of the events and omissions giving rise to the claim occurred in this district.

PARTIES

9. Plaintiff DRRI, the P&A designated by the Governor of the State of Rhode Island to provide protection and advocacy services to individuals with disabilities, is a "person" authorized to seek legal and equitable relief against organizations that deprive it of federally protected rights. DRRI, a non-profit corporation independent of state government, is incorporated in Rhode Island and maintains its principal place of business in Providence, Rhode Island.

10. DRRI receives federal funds pursuant to the PAIMI Act and is thereby obligated to provide protection and advocacy services for individuals with mental illness. Under the PAIMI Act, DRRI is also authorized to investigate suspected incidents of abuse and neglect and to pursue administrative, legal and other remedies on behalf of individuals with mental illness. In order to carry out its investigative functions, DRRI is granted the authority to have access to individuals with disabilities in the locations where they receive services, and to have access to their medical, educational and other records under certain conditions. 42 U.S.C. §§ 10806(b)(2) and 15043(I); 42 C.F.R. § 51.41; 45 C.F.R. § 1326.25(a). Further, Rhode Island law incorporates federal law and reiterates that the P&A has access to inspect records in order to investigate incidents of abuse and neglect. R.I. Gen. Laws § 40.1-25-1.

11. Defendant Charest is the Director of the RI Department of Behavioral Healthcare, Developmental Disabilities & Hospitals. As Director, Mr. Charest is responsible for the administration of all BHDDH programs. R.I. Gen. Laws § 40.1-5.4-4(4). He is also responsible for the maintenance and release of all records of BHDDH and the treatment records of individuals it serves. This includes records of patients at the BHDDH-operated psychiatric

hospital, Eleanor Slater Hospital. Mr. Charest is being sued in his official capacity as Director of BHDDH.

12. Defendant was, at all times relevant to this Complaint, acting under color of State law.

## FACTUAL ALLEGATIONS

13. On June 17, 2022, DRRI received an anonymous complaint regarding the abuse of a patient at Eleanor Slater Hospital ("ESH"). The complaint alleged that the patient was abused through the use of a mechanical restraint, known as a TAT belt, by ESH staff. The patient, an individual with a mental illness and developmental disabilities, is hereinafter referred to by her initials, "S.R."

14. In a letter dated June 17, 2022, DRRI notified Defendant that DRRI had initiated an investigation into the allegation of abuse regarding S.R. As part of that investigation, DRRI requested access to a variety of records. The letter provided detail concerning the statutory basis for the request.

15. As of the date of this complaint, DRRI's investigation into the alleged abuse of S.R. is ongoing. As such, DRRI has submitted requests for various records to Defendant, in writing, on a rolling basis.

16. On August 9, 2022, DRRI made another such request via email. The records sought included all records of the ESH restraint committee for the past year, and all records of the ESH restraint reduction committee for the same period. DRRI reminded Defendant of his obligation to produce the records no later than close of business on August 12.

17. On August 15, 2022, DRRI emailed Defendant to notify him that the August 9 request had not been fulfilled, and to remind Defendant of the need to produce the records or provide DRRI with a written denial of access.

18. On August 17, 2022, Counsel for Defendant provided, via email, the attendance list for the dates the ESH restraint committee and the ESH restraint reduction committee reviewed the use of mechanical restraint on S.R. (August 4, 2022, and June 27, 2022, respectively).

19. In this same email, Defendant issued a written denial of access to all other records of the two ESH committees. Defendant stated that each committee is a "peer review board" as defined in R.I. Gen. Laws § 5-37-1(12)(i) and, as such, records of the committee are protected by peer review privilege. Specifically, Defendant cited R.I. Gen. Laws §§ 5-37.3-7(c) and 23-17-25(a), which exempt peer review board records from discovery or introduction into evidence in a civil case.

20. On August 17, DRRI responded to Defendant's written denial by email. DRRI further described its statutory authority to request records of peer review boards pursuant to the PAIMI Act. DRRI provided multiple examples of cases in which federal District Courts and Courts of Appeals upheld the P&A's right to access peer review records that are otherwise protected by state law, and/or which found that state peer review protections did not apply when the P&A requested records pursuant to its investigatory authority. DRRI therefore requested Defendant produce the records of the June 27 and August 4 committee meetings no later than close of business on August 18, 2022.

21. As of the date of this complaint, DRRI has not received a response, and Defendant's August 17 decision denying access to the requested records remains in effect.

22. The actions of the Defendant, by refusing to provide to DRRI the requested committee records, have substantially interfered with DRRI's ability to conduct its investigation into alleged abuse of S.R.

## CAUSE OF ACTION 1 – the PAIMI Act

23. The PAIMI Act grants DRRI the authority to investigate incidents of abuse and/or neglect of individuals with mental illness if the incidents are reported to the system or there is probable cause to believe the incidents occurred. 42 U.S.C. § 10805(a)(1)(A); 42 C.F.R. § 51.42(b).

24. The PAIMI Act and its implementing regulations give DRRI the authority to access all individual records of:

> any individual [with a mental illness] (including an individual who has died or whose whereabouts are unknown)—
>
> a. who by reason of the mental or physical condition of such individual is unable to authorize the system to have such access;
>
> b. who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and
>
> c. with respect to whom a placement has been received by the system or with respect to whom… there is probable cause to believe that such individual has been subject to abuse or neglect.

42 U.S.C. § 10805(a)(4)(B); 42 C.F.R. § 51.42(b)(2).

25. S.R. is an individual with mental illness who does not have a legal guardian. At the time DRRI initiated its investigation, S.R. displayed symptoms of over-medication and DRRI determined that her mental condition prevented her from authorizing access to her records. DRRI received a complaint regarding the abuse of S.R. Therefore, DRRI is entitled to access S.R.'s records pursuant to the authority granted by the PAIMI Act.

26. Defendant does not dispute DRRI's authority to access records relating to S.R.'s treatment at ESH, as it has provided a variety of records to DRRI throughout the course of this investigation.

27. The implementing regulations to the PAIMI Act define individual records to include "[r]eports prepared by an agency charged with investigating abuse, neglect, or injury occurring at a facility rendering care or treatment, or by or for the facility itself" that describe abuse, neglect or injury occurring at the facility, the steps taken to investigate such incidents, and supporting information relied upon in creating the report. 42 C.F.R. § 51.41(c)(2).

28. ESH policy Restraint Policy and Procedure mandates the creation of a hospital restraint committee to "analyze[] restraint data to ascertain that restraints are used only as an emergency intervention, to identify opportunities for incrementally reducing the rate and increasing the safety of restraint use, and to identify any need to resident care processes." ESH Restraint Policy and Procedure, p. 8 (last approved March 10, 2022). In other words, the restraint committee is charged with investigating the use of restraint to ensure safety and prevent abuse, neglect and injury. Therefore, any reports or documents generated or used by the restraint committee are considered records to which DRRI is entitled access by the PAIMI Act.

29. The ESH policy also mandates the creation of a hospital restraint reduction committee in order to "minimize[] circumstances that give rise to restraint use and that maximize[] safety for patients and staff when restraints are used." *Id.* at 9. The committee's authority includes approval of the use of restraint devices, such as the TAT belt, on individual patients. *Id.* at 9-10. The restraint reduction committee is charged with investigating the use of restraint to ensure safety and prevent abuse, neglect and injury. Therefore, any reports or documents generated or used by

the restraint reduction committee are considered records to which DRRI is entitled access by the PAIMI Act.

30. State law protects records of peer review boards from certain instances of disclosure, as "neither the proceedings nor the records of peer review boards as defined in § 5-37-1 shall be subject to discovery or be admissible in evidence in any case save litigation arising out of the imposition of sanctions upon a physician." R.I. Gen. Laws § 23-17-25(a). *See also* § 5-37.3-7(c). However, DRRI seeks access to such records for the sole purpose of fulfilling its statutory obligation to investigation allegations of abuse and/or neglect. Therefore, disclosure of peer review board records to DRRI is not prohibited by state law, and in fact is preempted by DRRI's federal authority.

31. By refusing DRRI's written request for access to the records of the ESH restraint committee and restraint reduction committee, Defendant has deprived DRRI of its statutory rights under the PAIMI Act, 42 U.S.C. §§ 10801 *et seq*., and the regulations promulgated thereto, 42 C.F.R. §§ 51.1 *et seq.*

32. Defendant's violation of the PAIMI Act irreparably harms DRRI by preventing it from carrying out its responsibilities under the Act.

33. Unless Defendant is enjoined to provide DRRI the access required by the PAIMI Act, DRRI will continue to be irreparably harmed and will be unable to protect and advocate for persons with disabilities as required by the Act.

CAUSE OF ACTION 2 – the DD Act

34. The DD Act grants DRRI authority to investigate incidents of abuse and/or neglect of individuals with developmental disabilities. 42 U.S.C. § 15043(a)(2)(I).

35. DRRI's authority to access the records of an individual with a developmental disability who does not have a guardian, and who is unable to authorize DRRI to access her records, is identical to that in the PAIMI Act. 42 U.S.C. § 15043(a)(2)(I)(ii); 45 C.F.R. § 1326.25(a)(2).

36. S.R. is an individual with developmental disabilities who does not have a legal guardian. At the time DRRI initiated its investigation, S.R. displayed symptoms of over-medication and DRRI determined that her mental condition prevented her from authorizing access to her records. DRRI received a complaint regarding the abuse of S.R. Therefore, DRRI is entitled to access S.R.'s records pursuant to the authority granted by the DD Act.

37. The implementing regulations to the DD Act define individual records to include "[r]eports prepared by a Federal, State or local governmental agency… charged with investigating incidents of abuse or neglect, injury or death. The organizations whose reports are subject to this requirement include, but are not limited to… medical care evaluation or peer review committees, regardless of whether they are protected by federal or state law." 45 C.F.R. § 1326.25(b)(2).

38. For the reasons discussed in paragraphs 27-30, *supra*, any reports or documents generated or used by the ESH restraint committee or ESH restraint reduction committee are considered records to which DRRI is entitled access by the DD Act.

39. By refusing DRRI's written request for access to the records of the ESH restraint committee and restraint reduction committee, Defendant has deprived DRRI of its statutory rights under the DD Act, 42 U.S.C. §§ 15001 *et seq*., and the regulations promulgated thereto, 45 C.F.R. §§ 1326.19 – 1326.28.

40. Defendant's violation of the DD Act irreparably harms DRRI by preventing it from carrying out its responsibilities under the Act.

41. Unless Defendant is enjoined to provide DRRI the access required by the DD Act, DRRI will continue to be irreparably harmed and will be unable to protect and advocate for persons with disabilities as required by the Act.

### CAUSE OF ACTION 3 – Rhode Island General Laws § 40.1-25-1

42. Rhode Island law requires that "facilities rendering care or treatment" to individuals with mental illness shall provide "access to a facility." R.I. Gen. Laws § 40.1-25-1.

43. Access to the facility includes the ability to "inspect all records related to persons in treatment." § 40.1-25-1(2).

44. That access is granted to permit DRRI to "[i]nvestigate incidents of abuse and neglect of mentally ill individuals if incidents are reported to the system or if there is probable cause to believe the incidents occurred." § 40.1-25-1(6).

45. Defendant's denial of access to records related to S.R. violates Rhode Island law and interferes with DRRI's ability and authority to investigate abuse and neglect.

46. Defendant's violation of Rhode Island law irreparably harms DRRI by preventing it from carrying out its responsibilities under § 40.1-25-1(6).

47. Unless Defendant is enjoined to provide DRRI the access required by Rhode Island law, DRRI will continue to be irreparably harmed and will be unable to protect and advocate for persons with disabilities as required by law.

### CAUSE OF ACTION 4 – Section 1983

48. Defendant's complained-of actions were taken under color of, and pursuant to the authority granted to him, under state law.

49. By failing to provide DRRI access to the requested records, Defendant has deprived DRRI of the "rights and privileges secured by the Constitution and [federal] laws," specifically the DD and PAIMI Acts. 42 U.S.C. § 1983.

## INJUNCTIVE RELIEF

50. Plaintiff adopts and restates the allegations set forth in paragraphs 1-49 of this complaint.

51. As a proximate result of Defendant's violation of the PAIMI Act, the DD Act, and R.I. Gen. Laws § 40.1-25-1, DRRI has suffered, and will continue to suffer, irreparable harm for which there is no remedy at law.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

1. Enter a declaratory judgment that Defendant's refusal to provide the requested records violates the PAIMI Act;

2. Enter a declaratory judgment that Defendant's refusal to provide the requested records violates the DD Act;

3. Enter a declaratory judgment that Defendant's refusal to provide the requested records violates R.I. Gen. Laws 40.1-25-1;

4. Enter a declaratory judgment that Defendant's refusal to provide the requested records violates Section 1983;

5. Enter preliminary and thereafter permanent injunctive relief requiring the Defendant to provide DRRI with access to the requested records of the ESH restraint committee and ESH restraint reduction committee;

6. Retain jurisdiction over this action to ensure Defendant's compliance with the mandates of the PAIMI and DD Acts and R.I. Gen. Laws § 40.1-25-1;

7. Award DRRI attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

8. Award such other, further or different relief as the Court deems equitable and just.

This 24th day of August, 2022.

Respectfully submitted,

/s/ Brian Adae
Brian Adae (RI State Bar No. 2536)
DISABILITY RIGHTS RHODE ISLAND
33 Broad Street, Suite 601
Providence, RI 02903
Phone: (401) 831-3150
Fax: (401) 274-5568
Email: badae@drri.org

/s/ Kristine L. Sullivan
Kristine L. Sullivan (NC Bar No. 35595)
*Pro Hac Vice*
DISABILITY RIGHTS RHODE ISLAND
33 Broad Street, Suite 601
Providence, RI 02903
Phone: (401) 831-3150
Fax: (401) 274-5568
Email: ksullivan@drri.org

CERTIFICATE OF SERVICE

I hereby certify that on August 43, 2022, the foregoing PLAINTIFF'S FIRST AMENDED COMPLAINT was filed with the United States District Court for the District of Rhode Island using the CM/ECF system and sent by e-mail to the following recipients.

/s/ Kristine L. Sullivan

Recipients:

Thomas J. Corrigan Jr.
EOHHS Legal Counsel
Department of Behavioral Healthcare,
Developmental Disabilities & Hospitals
14 Harrington Road (Barry Hall)
Cranston, RI 02920
(401) 462-1628
Thomas.Corrigan@ohhs.ri.gov

Kate Breslin Harden
Chief, Legal Division
Department of Behavioral Healthcare,
Developmental Disabilities & Hospitals
14 Harrington Road (Barry Hall)
Cranston, RI 02920
(401) 462-0593
Kate.BreslinHarden@bhddh.ri.gov

Richard Charest
Director
Department of Behavioral Healthcare,
Developmental Disabilities & Hospitals
14 Harrington Road (Barry Hall)
Cranston, RI 02920
(401) 462-2339
Richard.Charest@bhddh.ri.gov