IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DISABILITY RIGHTS RHODE ISLAND,

Plaintiff

v.

RICHARD CHAREST, in his official capacity as Director of THE RHODE ISLAND DEPARTMENT OF BEHAVIORAL HEALTHCARE, DEVELOPMENTAL DISABILITIES & HOSPITALS,

Defendant.

C.A. No. 1:22-cv-00304-MSM-PAS

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

## INTRODUCTION

Plaintiff, Disability Rights Rhode Island ("DRRI"), seeks a preliminary injunction because Defendant is violating federal and state laws by denying DRRI access to records maintained by the Department of Behavioral Healthcare, Developmental Disabilities & Hospitals ("BHDDH"). DRRI requests this Court enter a preliminary injunction to allow it to access the records and fulfill its mandate as the Protection and Advocacy system ("P&A") for people with disabilities in Rhode Island.

## BACKGROUND AND FACTS

### I. Congress created the P&A system as a safeguard for people with disabilities.

In response to inhumane and deplorable conditions discovered at New York's Willowbrook State School, an institution for adults and children with developmental disabilities,

Congress enacted the Developmental Disabilities Assistance and Bill of Rights Act ("DD Act") of 1975. Congress specifically found that "individuals with developmental disabilities are at greater risk than the general population of abuse, neglect, financial and sexual exploitation, and the violation of their legal and human rights." 42 U.S.C. § 15001(a)(5). Therefore, in order to receive federal funds for certain disability programs, each State was thereafter required to have a P&A system "to protect the legal and human rights of individuals with developmental disabilities." 42 U.S.C. §§ 15041 and 15043(a)(1). Plaintiff DRRI is the P&A system for Rhode Island and, as such, is authorized to investigate suspected incidents of abuse and neglect of individuals with disabilities. § 15043(a)(2)(B).

In 1986, Congress recognized that individuals with mental illness are similarly vulnerable to abuse and neglect. Modeled after the DD Act, the Protection and Advocacy for Mentally Ill Individuals Act[1] ("PAIMI Act") similarly required states to establish a P&A system to "protect and advocate the rights of such individuals [with mental illness] to ensure the enforcement of the Constitution and Federal and State statutes." 42 U.S.C. § 10801(b)(2)(A). Congress found that a P&A system was necessary, as "[s]tate systems for monitoring compliance with respect to the rights of individuals with mental illness vary widely and are frequently inadequate." § 10801(a)(4). Pursuant to the PAIMI Act, DRRI is the P&A for individuals with mental illness in Rhode Island.

In enacting the DD and PAIMI Acts, Congress recognized that P&As would need broad access to records, facilities, and individuals to fulfill their mandate. Congress expressed its intent to grant P&As the fullest and broadest access possible: "The Committee recognizes the need for

[1] The original Act was typically referred to by the abbreviation "PAMII." The Act was reauthorized in 1991 and renamed the Protection and Advocacy for Individuals with Mental Illness Act. DRRI uses the latter abbreviation, "PAIMI," for both versions of the law.

full access to facilities and clients and to their records in order to ensure the protection of mentally ill persons. It is the intent of the Committee that the [P&A system] have the fullest possible access to client records…" S. Rep. No. 99-109 (1985) (emphasis added), *reprinted in* 1986 U.S.C.C.A.N. 1361, 1370. Congress granted the P&A this broad access for two main purposes. The first is to provide the P&A access to records, locations, and persons for the purpose of "investigat[ing] abuse and neglect of persons with [disabilities] if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred." 42 U.S.C. §§ 10805(a)(1)(A) and 15043(a)(2)(B); 42 C.F.R. § 51.42(b); 45 C.F.R. § 1326.27(b).[2] The second is to provide access for the purpose of monitoring facilities and the treatment of residents there. 42 U.S.C. §§ 10805(a)(3) and 15043(a)(2)(H); 42 C.F.R. § 51.42(c); 45 C.F.R. § 1326.27(c).

## II. Defendant denied DRRI access to records it seeks as part of an investigation into the alleged abuse of a person with disabilities.

On June 17, 2022, DRRI received a complaint regarding the abuse of a patient, "S.R," at Eleanor Slater Hospital. S.R. is a person with both mental illness and developmental disabilities. DRRI therefore initiated an investigation of the very sort for which Congress created the P&A system and granted it broad access to records.

Defendant, in his official capacity as the Director of BHDDH, is responsible for the administration of all BHDDH programs. R.I. Gen. Laws § 40.1-5.4-4(4). This includes administration of Eleanor Slater Hospital ("ESH"), which is operated by BHDDH, and the maintenance and release of all treatment records of individuals served therein. Thus, on July 17, DRRI notified Defendant in writing regarding its investigation into the allegation of abuse

---

[2] Rhode Island law codifies the right of the P&A to investigate allegations of abuse and neglect of individuals with mental illness. R.I. Gen. Laws § 401.-25-1(6).

regarding S.R. DRRI requested access to a variety of records in the letter. The investigation into the alleged abuse of S.R. is ongoing, and DRRI has submitted requests for various records to Defendant, in writing, on a rolling basis over the last two months.

On August 9, 2022, DRRI made another such request via email. The records sought included all records of the ESH restraint committee for the past year, and all records of the ESH restraint reduction committee for the same period. DRRI reminded Defendant of his obligation to produce the records no later than close of business on August 12. Having received no response to its request by August 15, DRRI emailed Defendant to remind him of the need to produce the records or provide DRRI with a written denial of access.

On August 17, 2022, Defendant denied DRRI access to the requested records. Defendant stated that each committee is a “peer review board” as defined in R.I. Gen. Laws § 5-37-1(12)(i) and, as such, records of the committee are protected by peer review privilege. Specifically, Defendant cited R.I. Gen. Laws §§ 5-37.3-7(c) and 23-17-25(a), which exempt peer review board records from discovery or introduction into evidence in a civil case. DRRI responded to Defendant, further describing its statutory authority to access records of peer review boards pursuant to the PAIMI Act, and providing multiple examples of cases in which federal District Courts and Courts of Appeals have upheld this right. DRRI therefore renewed its request for the records of the two committees. As of the date DRRI filed its Complaint, DRRI had not received a response to its renewed request, and Defendant’s August 17 decision denying access remains in effect.

## ARGUMENT

DRRI seeks a preliminary injunction in this matter because Defendant’s continuing violation of federal and state law prevents DRRI from fulfilling its mandate as the P&A for

Rhode Island. A preliminary injunction is appropriate in this case because DRRI's authority to access records of the ESH committees specifically, and peer review records more broadly, is clear under federal and state law. Moreover, the relevant factors for issuing a preliminary injunction overwhelmingly favor DRRI.

"To obtain a preliminary injunction, a plaintiff 'must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Bruns v. Mayhew*, 750 F.3d 61, 65 (1st Cir. 2014) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374 (2008)). As will be outlined below, DRRI is likely to succeed on the merits of this case, as the right of the P&A to access peer review records is well-settled law across the country. DRRI will suffer irreparable harm without a preliminary injunction, as it will be unable to fulfill its federal mandate to investigate alleged abuse and neglect of people with disabilities. The balance of equities is in DRRI's favor; while DRRI will be harmed without an injunction, no such harm will befall Defendant if the injunction is granted. Finally, persuasive precedent establishes that the public interest, as described by Congress in its findings and purposes in enacting the DD and PAIMI Acts, is served by DRRI accessing records to which it is entitled.

## I. DRRI is likely to succeed on the merits of its claims.

### A. DRRI is likely to succeed on the merits of its claims pursuant to the DD and PAIMI Acts.

Though this action is a case of first impression in both this Court and the First Circuit, P&A access to peer review records is well-settled throughout sister District and Circuit courts. Therefore, DRRI is likely to succeed on the merits of its claims under the DD and PAIMI Acts.

DRRI seeks access to records of the ESH restraint committee and ESH restraint reduction committee (hereinafter, "the ESH committees"). ESH's Restraint Policy and Procedure mandates the creation of a hospital restraint committee to, *inter alia*, "identify opportunities for… increasing the safety of restraint use, and to identify any need to redesign care processes." Eleanor Slater Hospital Restraint Policy and Procedure, p. 8 (last approved March 10, 2022). It also mandates the creation of a hospital restraint reduction committee to approve the use of restraint on patients and "maximize safety for patients and staff when restraints are used." *Id.* at 9. In order to carry out these responsibilities, the ESH committees must necessarily investigate the use of restraint to identify abuse, neglect, or injury. Therefore, records of the ESH committees constitute "[r]eports prepared by any staff of a facility rendering care and treatment and treatment or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents…." 42 U.S.C. §§ 10806(b)(3)(A) and 15043(c)(2); 42 C.F.R. § 51.41(c)(2); 45 C.F.R. § 1326.25(b)(2). As such, these reports are records to which DRRI is entitled access pursuant to its authority to investigate alleged abuse and neglect of individuals with disabilities. *Id.*

In his denial of access on August 17, 2022, Defendant did not dispute that DRRI is entitled to access the records of patient S.R. in furtherance of its investigation. In fact, Defendant has provided a variety of records to DRRI throughout the course of this investigation. Nor has Defendant alleged that the records at issue here are generally excluded from the types of records to which DRRI is entitled access. Rather, Defendant alleges that the records DRRI seeks are records of a "peer review board" as defined in R.I. Gen. Laws § 5-37-1(12)(i) and, as such, the records are protected by peer review privilege. Defendant cites the regulations implementing the PAIMI Act to justify his denial of access to the ESH committees' records. In particular,

Defendant points to 42 C.F.R. § 51.41(c)(4), which states that the PAIMI Act is "not intended to preempt State law protecting records produced by medical care evaluation or peer review committees."

However, the records of the ESH committees are not subject to the protections of Rhode Island's peer review laws. R.I. Gen. Laws §§ 5-37.3-7(c) and 23-17-25(a) each prohibit access to peer review records via discovery and restrict the introduction of such records into evidence in court. A number of federal courts, construing nearly identical state statutes, determined that where the P&A seeks access to peer review records pursuant to its investigatory authority, i.e., not through discovery or to introduce the records into evidence in court, the state peer review statutes in question did not apply. For example, in *Protection & Advocacy for Persons with Disabilities v. Mental Health & Addiction Services*, the relevant Connecticut statute provided that peer review records "shall not be subject to discovery or introduction into evidence in any civil action for or against a health care provider…." 448 F.3d 119, 128 (2nd Cir. 2006) (quoting Conn. Gen. Stat. § 19a-17b(d)). The Connecticut P&A sought the records in question pursuant to its investigatory authority under PAIMI, not for use as evidence in a civil action. The Court ruled that the state statute did not apply to the records the P&A sought, as "the text of [state law] does not prohibit the disclosure of peer review records generally but only in a specific situation: during discovery in a civil action against a health care provider arising out of matters that are the subject of the peer review." *Id.* at 129. *Accord Ctr. for Legal Advocacy v. Hammons*, 323 F.3d 1262, 1273 (10th Cir. 2003); *Pa. Prot. & Advocacy, Inc. v. Houstoun*, 228 F.3d 423, 428 (3d Cir. 2000); *Disability Rights N.C. v. Frye Reg'l Med. Ctr., Inc.*, 2014 WL 5810458, *2-3 (W.D.N.C. 2014); *Disability Rights N.C. v. Moses H. Cone Mem'l Hosp. Operating Corp.*, 2013 WL 179034, *4 (M.D.N.C. 2013). Similarly, in the present matter, DRRI does not seek the requested

records as part of a civil action; nor is it requesting the records through discovery. Rather, the request was made as part of an active, ongoing investigation into the care and treatment of a patient at ESH. Therefore, Rhode Island's peer review statutes do not apply to the records DRRI seeks, and Defendant cannot deny DRRI access to same.

Assuming, *arguendo*, Rhode Island's peer review statutes apply to these records, the PAIMI Act and regulations implementing the DD Act explicitly preempt state law, and thus permit DRRI access. The PAIMI Act specifies that "[i]f the laws of a State prohibit an eligible [P&A] system from obtaining access to the records of an individual with mental illness… [that law] shall not apply to such system before the date such system is no longer subject to such a prohibition, or the expiration of the 2-year period beginning on May 23, 1986, whichever occurs first." 42 U.S.C. § 10806(b)(2)(C). The regulations implementing the PAIMI Act similarly prohibit state law from "diminish[ing] the required authority of the Act." 42 C.F.R. § 51.31(i). The regulations to the DD Act state it more simply: records to which the P&A is entitled access include "[r]eports prepared by a Federal, State or local governmental agency, or a private organization charged with investigating incidents of abuse or neglect, injury or death…" and include "medical care evaluation or peer review committees, <u>regardless of whether they are protected by federal or state law</u>." 45 C.F.R. § 1326.25(b)(2) (emphasis added). Each federal court asked to determine P&A access to peer review records has found that the PAIMI and DD Acts preempt state law protecting such records. *Prot. & Advocacy for Persons with Disabilities*, 448 F.3d at 129; *Mo. Prot. & Advocacy Servs. v. Mo. Dep't. of Mental Health*, 447 F.3d 1021, 1024 (8th Cir. 2006); *Hammons*, 323 F.3d at 1273; *Houstoun*, 228 F.3d at 428; *Frye Reg'l Med. Ctr.*, 2014 WL 5810458 at *4; *Cone Mem'l Hosp. Operating Corp.*, 2013 WL 179034 at *5; *Disability Law Ctr. of Alaska, Inc., v. North Star Behavioral Health*, 2008 WL 853639, *3 (D.

Alaska 2008); *Office of Prot. & Advocacy for Pers. with Disabilities v. Armstrong*, 266 F. Supp. 2d 303, 319-20 (D. Conn. 2003). *Cf. Matter of Disability Rts. Idaho Request for Ada Cnty. Coroner Recs. Relating to the Death of D.T.*, 168 F. Supp. 3d 1282, 1294 (D. Idaho 2016) (citing *Houstoun* in its determination that the PAIMI Act preempts state law governing the confidentiality of coroners' reports); *Advocacy Ctr. v. Stalder*, 128 F. Supp. 2d 358, 367 (M.D. La. 1999) ("The authority to investigate would mean nothing and advocacy in the form of investigation would be ineffective if federal law would not preempt" state policy.).

Though Defendant is correct that 42 C.F.R. § 51.41(c)(4) states that the PAIMI Act is "not intended to preempt State law protecting records produced by medical care evaluation or peer review committees," Defendant ignores the plain language to the contrary in Section 10806(b)(2)(C) of the PAIMI Act. Each federal court that has considered the application of this regulation has rejected it as either contradictory to the plain meaning of the PAIMI Act, or an unreasonable interpretation of the statute. For example, the Middle District of North Carolina, construing a state law nearly identical to Rhode Island's, summarized persuasive precedent as follows:

> For example, in an opinion authored by then-Judge Alito, the Third Circuit held that the "interpretation of [PAIMI] set out in 42 C.F.R. § 51.41(c)(4) does not represent a reasonable interpretation of the statute, and we must therefore reject it." *Houstoun*, 228 F.3d at 427. Similarly, the Second Circuit, in an opinion authored by then-Judge Sotomayor, found that Congress has "clearly spoken" to the issue of whether protection and advocacy systems are entitled to access peer review records, noting that where "Congress has unequivocally expressed its intent, the statute

> controls." *Prot. & Advocacy for Persons with Disabilities*, 448 F.3d at 128.
>
> The Eighth and Tenth Circuits have reached the same conclusion. *Mo Prot. & Advocacy Servs*, 447 F.3d at 1024; *Hammons*, 323 F.3d at 1272.

*Cone Mem'l Hosp. Operating Corp.*, 2013 WL 179034, *4 (M.D.N.C. 2013). Both the Seventh Circuit Court of Appeals and the District Court for the District of Alaska have reached similar conclusions. *Ind. Prot. & Advocacy Servs. v. Ind. Family & Soc. Servs Admin.*, 603 F.3d 365, 382-3 (7th Cir. 2010); *North Star Behavioral Health*, 2008 WL 853639 at *3.

Given the unanimity of federal courts rulings throughout the country, in favor of the P&A, DRRI is likely to succeed on the merits of its claims pursuant to the DD and PAIMI Acts.

**B. DRRI is likely to succeed on the merits of its claim pursuant to R.I. Gen. Laws § 40.1-25-1.**

R.I. Gen. Laws § 40.1-25-1 does not grant DRRI novel or expanded rights; it merely codifies into state law the authority granted to the P&A under the PAIMI Act. As described previously in this Memorandum, records of the ESH committees are "records" to which DRRI is entitled access pursuant to the PAIMI Act and, by extension, pursuant to § 40.1-25-1. For the same reasons previously discussed, DRRI is therefore likely to succeed on the merits of its claim pursuant to § 40.1-25-1.

**C. DRRI is likely to succeed on the merits of its claim pursuant to 42 U.S.C. § 1983.**

As the Director of BHDDH, state law grants Defendant the authority and responsibility to administer all BHDDH programs, including Eleanor Slater Hospital. R.I. Gen. Laws § 40.1-5.4-4(4). This includes the responsibility to maintain, and the authority to release, all records of BHDDH and the treatment records of individuals it serves. In denying DRRI access to records, Defendant was acting under color of state law. As described previously in this Memorandum, in

denying access records to which DRRI is entitled, Defendant deprived DRRI of the "rights and privileges secured by the Constitution and [federal] laws," specifically by the DD and PAIMI Acts. 42 U.S.C. § 1983.

Again, while this is a case of first impression in this Court and the First Circuit, cases in a number of federal courts provide persuasive precedent, ruling that violation of the P&A's access authority pursuant to the DD and/or PAIMI Acts violates 42 U.S.C. § 1983. For example, the U.S. District Court for the District of Connecticut determined that the Connecticut P&A could bring a claim pursuant to § 1983. *Armstrong*, 266 F. Supp. 2d at 312 (D. Conn. 2003). The court adopted the reasoning in *Stalder*, finding that "a P & A had a First Amendment right to 'communicate and consult with the population it was created to serve,' and that 'timely access to records is essential for effective communicate between the [P & A] and its clients just as it is for other advocates and attorneys.'" *Id.* (quoting *Stalder*, F. Supp. 2d at 366 (M.D. La. 1999)). The court also held, as in *Stalder*, that § 1983

> provides a cause of action for violations of federal statutes, unless Congress has "foreclosed" such an enforcement action, or where the federal statute "does not create enforceable rights, privileges or immunities within the meaning of § 1983." The *Stalder* court rightly noted that [PAIMI] contains no express statement or comprehensive remedial scheme foreclosing a § 1983 action. Instead, it cited [PAIMI]'s express language to the contrary.

*Id.* (internal citations omitted). *See also Flint Cmty. Sch.*, 146 F. Supp. 3d at 905 (E.D. Mich. 2015); *Ga. Advocacy Office v. Shelp*, 2011 WL 13269436, at *6 (N.D. Ga. 2011) ("This court concludes that the PAIMI Act confers rights of access to the plaintiff in unambiguous terms and that these rights are enforceable under § 1983."); *Miss. Prot. & Advocacy Sys., Inc. v. Cotten*,

1989 WL 224953, at *8 (S.D. Miss. 1989), *aff'd*, 929 F.2d 1054 (5th Cir. 1991). *Cf. Disability Rights N.Y. v. N. Colonie Bd. of Educ.*, 2017 WL 1901958 (N.D.N.Y. 2017) (granting the P&A attorneys' fees under 42 U.S.C. § 1988 as the prevailing party under its Section 1983 claim); *Mo. Prot. & Advoc. Servs.*, 447 F.3d at 25, fn. 2 (8th Cir. 2006) ("MOPAS's motion regarding section 1983 was moot to the extent it sought injunctive relief, but was not moot to the extent it sought attorney fees."); *Disabilities Rights Ctr., Inc. v. Comm'r, N.H. Dep't of Corr.*, 143 N.H. 674, 680-81, 732 A.2d 1021, 1025 (1999) (vacating and remanding the trial court's order denying attorney's fees, and ordering the court to award attorney's fees if disclosure of the requested records was subsequently granted pursuant to Section 1983.).

A minority of federal courts have declined to address the P&A's Section 1983 claim, "[b]ecause the PAIMI Act itself provides a cause of action for equitable relief." *Ind. Prot. & Advoc. Servs.*, 603 F.3d at 380 (7th Cir. 2010). *See also Matter of Disability Rights Idaho*, 168 F. Supp. 3d at 1299 (D. Idaho 2016) (declining to address the P&A's ability to pursue relief under Section 1983 for the same reasons as the Seventh Circuit). It is noteworthy that neither the Seventh Circuit nor the Idaho district court found that the P&A's ability to pursue relief under the PAIMI Act <u>prohibited</u> relief under 42 U.S.C. § 1983; the courts simply <u>declined to reach</u> the issue. As the majority of courts have reached this issue and permitted the P&A to proceed under Section 1983, and because DRRI is likely to succeed on the merits of its claims regarding the underlying violations of federal law, DRRI is likely to succeed on the merits of its claim pursuant to Section 1983.

**II. DRRI will suffer irreparable harm if it is unable to access the requested records.**

"The moving party seeking a preliminary injunction must demonstrate that it stands to suffer some irreparable harm that is presently threatened or imminent and for which no adequate

legal remedy exists to restore that plaintiff to its rightful position." *Fund for Cmty. Progress v. United Way of Se. New England*, 695 A.2d 517, 521 (R.I. 1997) (internal citations omitted). Equitable relief, such as a preliminary injunction, "may be appropriate when damages prove difficult to measure or when a defendant continually interferes with a plaintiff's interest in property." *R.I. Tpk. & Bridge Auth. v. Cohen*, 433 A.2d 179, 183-84 (R.I. 1981). DRRI can demonstrate that it stands to suffer imminent and irreparable harm, i.e., the inability to carry out its statutory mandates under the DD and PAIMI Acts and R.I. Gen. Laws § 40.1-25-1. In fact, the inability to carry out its mandates as the P&A threatens DRRI's very status as the P&A for the state of Rhode Island. 42 U.S.C. §§ 10804(a)(1)(B) and 15043(a)(4); 42 C.F.R. § 51.10. Neither monetary damages nor another legal remedy is sufficient to remedy this harm.

More than a dozen federal courts have determined that denying a P&A access to records constitutes irreparable harm. In perhaps the most frequently cited of these cases, the U.S. District Court for the Eastern District of Wisconsin granted the P&A's motion for preliminary injunction. In evaluating the second prong of the standard for preliminary injunction, the court found that

> the defendants' refusal to provide [the P&A] with records that it is entitled to review (indeed, charged to review as a part of its responsibilities) does, in a very real and readily identifiable way, pose a threat to the plaintiff's being able to discharge its obligations. And no amount of damages will remedy that sustained harm.

*Wisconsin Coal. for Advocacy, Inc. v. Czaplewski*, 131 F. Supp. 2d 1039, 1051 (E.D. Wis. 2001). Similarly, the U.S. District Court for the District of Connecticut issued a permanent injunction in favor of the Connecticut P&A based in part on its determination that preventing access to peer review records constituted irreparable harm. "[T]here can be no dispute that Connecticut P&A

has no other adequate remedy at law, and that it will be irreparably harmed if it is 'prevented from pursuing fully its right to access records… in pursuit of its duty to investigate circumstances providing probable cause to believe abuse or neglect may be occurring.'" *Armstrong*, 266 F. Supp. 2d at 311 (D. Conn. 2003) (internal citations omitted). *Accord Disability Rights N.Y. v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 2022 WL 484368, at *12 (N.D.N.Y. 2022); *Disability Rts. New York v. New York State Dep't of Corr. & Cmty. Supervision*, 2021 WL 3124050, at *4 (N.D.N.Y. 2021) (hereinafter "*Disability Rights N.Y. (I)*"); *Disability Rights Fla., Inc. v. Jacobs*, 473 F. Supp. 3d 1335, 1339-40 (M.D. Fla. 2019); *Disability Rights Ohio v. Buckeye Ranch, Inc.*, 375 F. Supp. 3d 873, 897 (S.D. Ohio 2019); *Disability Rights Ctr.-NH v. Hanks*, 2018 WL 2220859, at *1 (D.N.H. 2018); *Matter of Disability Rights Idaho*, 168 F. Supp. 3d 1282, 1300 (D. Idaho 2016); *Flint Cmty. Sch.*, 146 F. Supp. 3d 897, 903 (E.D. Mich. 2015); *Mich. Prot. & Advocacy Serv., Inc. v. Evans*, 2010 WL 3906259, at *5 (E.D. Mich. 2010); *State of Conn. Office of Prot. & Advocacy for Pers. with Disabilities v. Hartford Bd. Of Educ.*, 355 F. Supp. 2d 649, 653 (D. Conn. 2005), *aff'd sub nom, Conn. Office of Prot. & Advocacy for Pers. with Disabilities v. Hartford Bd. Of Educ.*, 464 F.3d 229 (2nd Cir. 2006); *Iowa Prot. & Advocacy Servs., Inc. v. Rasmussen*, 521 F. Supp. 2d 895, 901 (S.D. Iowa 2002); *Iowa Prot. & Advocacy Servs., Inc. v. Gerard Treatment Programs, L.L.C.*, 152 F. Supp. 2d 1150, 1174 (N.D. Iowa 2001).

As Defendant's actions prevent DRRI from fulfilling its federal and state mandates to investigate alleged abuse and neglect, DRRI will suffer irreparable harm in the absence of preliminary injunctive relief.

## III. The balance of equities tips in DRRI's favor.

The next prong of the preliminary injunction inquiry requires the Court to balance the equities; in other words, does the potential harm (to Defendant) in issuing an injunction outweigh the potential benefit (to DRRI)? The answer to the question must be no. Congress placed a heavy thumb on DRRI's side of the scale by mandating broad access to records in order for the P&A to discharge its obligation to investigate allegations of abuse and neglect. As discussed in the preceding section of this Memorandum, denial of such access constitutes irreparable harm to DRRI.

In contrast, the issuance of an injunction against Defendant does not subject him to penalty or hardship. For example,

> the district court in *Czaplewski* concluded that the defendant institutions' concerns about disciplinary or regulatory consequences for disclosure of records did not weigh against issues of a preliminary injunction for the very simple reason that the injunction itself would shield the defendants from such consequences, noting, "[a]fter all, the defendants could hardly be punished for complying with a federal court order."

*Gerard Treatment Programs*, 152 F. Supp. 2d at 1174 (N.D. Iowa 2001) (quoting *Czaplewski*, 131 F. Supp. 2d at 1052 (E.D. Wis. 2001)). Similarly, the district court in *Buckeye Ranch* held that "[i]ssuance of an injunction against Buckeye Ranch does not subject it to a penalty or hardship because it only requires compliance with the P&A Acts." *Buckeye Ranch*, 375 F. Supp. 3d at 897 (S.D. Ohio 2019). *See also Disability Rights N.Y. (I)*, 2021 WL 3124050, at *14 (N.D.N.Y. 2021) ("a general requirement to follow the law does not impose a hardship."); *Jacobs*, 473 F. Supp. 3d at 1340 (M.D. Fla. 2019); *Flint Cmty. Sch.*, 146 F. Supp. 3d at 903-04

(E.D. Mich. 2015). Indeed, providing DRRI access to the records in question is likely to benefit Defendant, as "one would suppose that a facility's legitimate interests are served when abuse and neglect are uncovered and can be corrected." *Gerard Treatment Programs* at 1175 (emphasis added).

Nor does the potential harm of disclosing peer review records, in particular, outweigh the harm to DRRI if a preliminary injunction is denied. In *Georgia Advocacy Office. v. Shelp*, the Georgia P&A sought records that were protected by the state's peer review law. 2012 WL 13071928 at *1 (N.D. Ga. 2012). Georgia's law, like that in Rhode Island, prohibits discovery of peer review records or their introduction into evidence in a lawsuit against a healthcare provider. *Id.* at *2. The defendant in *Shelp*, who is Georgia's counterpart to the Defendant here, denied the P&A access to peer review records based on state law. The court acknowledged the goals of the peer review process, including "candid evaluation of one's own actions and those of peers… as well as the policy changes that result therefrom, [which] are intrinsically dependent on keeping the peer review process shielded from outsiders." *Id.* at *3. However, the court went on to find that "[w]hile these goals undoubtedly aim to serve the higher purpose of improving patient care, so do the P&A Acts. The balance the P&A Acts strike between secrecy and oversight dictates that the [P&A] be given the same access to peer review records as it is any other records." *Id.* In other words, because the PAIMI Act, 42 C.F.R. § 51.45(a), and DD Act, 45 C.F.R. § 1326.28(a)-(b), both require the P&A to maintain the confidentiality of records it receives in the course of an investigation, "[t]here is no reason to suspect that the confidentiality of the records will be breached." *Gerard Treatment Programs* at 1174-75 (quoting *Stalder*, 128 F. Supp. 2d at 366 (M.D. La. 1999)). *Accord Rasmussen*, 521 F. Supp. 2d at 901 (S.D. Iowa 2002).

## IV. The public interest will be served by this Court granting DRRI a preliminary injunction.

In passing the DD and PAIMI Acts, Congress made an explicit finding that "[s]tate systems for monitoring compliance with respect to individuals with [disabilities] vary widely and are frequently inadequate." 42 U.S.C. § 10801. Congress created the P&A system, funded it, and granted it broad access authority because individuals with disabilities are "vulnerable to abuse, injury, and neglect." *Houstoun,* 228 F.3d at 425 (3rd Cir. 2000). "The Protection and Advocacy Acts embody compelling public interest that Congress expressed in the purposes" of each statute. *Flint Cmt. Sch.* 146 F.Supp.3d at 904 (E.D. Mich. 2015). The purposes of the DD and PAIMI Acts – to protect and advocate for individuals with disabilities, and to investigate allegations of abuse and neglect of such individuals – are frustrated when the P&A is prevented access to essential records to which it is entitled. *Id. Accord Disability Rights N.Y. (I),* 2021 WL 3124050, at *14 (N.D.N.Y. 2021); *Jacobs,* 473 F. Supp. 3d at 1340 (M.D. Fla. 2019); *Rasmussen,* 521 F. Supp. 2d at 901-02 (S.D. Iowa 2002); *Czaplewski*, 131 F. Supp. 2d at 1052 (E.D. Wis. 2001). As in each of the cited cases, "the public interest is served by the fulfillment of [DRRI's] mandate as the P & A agency, as evidenced by Congress's findings regarding the need for the P & A system." *Buckeye Ranch*, 375 F. Supp. 3d at 897 (S.D. Ohio 2019). This prong of the inquiry thus favors granting DRRI the preliminary injunction it seeks.

## V. DRRI should not be required to post a bond.

Fed. R. Civ. P. 65(c) requires that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant." This provision is intended to compensate a party who is wrongfully restrained or enjoined for subsequent damages. *Id.* In the case at bar, requiring a bond would not insulate Defendant from harm, assuming any occurred,

stemming from a preliminary injunction in DRRI's favor. As discussed previously, releasing records to DRRI in compliance with a federal court order insulates Defendant from potential liability. Defendant will incur no significant financial burden if the preliminary injunction is granted. Therefore, an ineffective bond should not be mandatory in this case. *See Buckeye Ranch*, 375 F. Supp. 3d at 897-8 (S.D. Ohio 2019); *Gerard Treatment Programs*, 152 F. Supp. 2d at 1176 (N.D. Iowa 2001).

Rule 65(c) grants the court great discretion in setting the amount of the bond, mandating only that the bond be "in an amount that the court considers proper." Fed. R. Civ. P. 65(c). The court may set the bond at the full amount "that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined;" alternatively, the court may set the bond below that amount. *Axia NetMedia Corp. v. Mass. Technology Park Corp.*, 889 F.3d 1, 11-12 (1st Cir. 2018). At least two district courts have waived the bond for P&As seeking access to records. The *Gerard* court found that no security was necessary in the case, as "plaintiff is a non-profit advocacy organization created by the state under federal law." *Gerard Treatment Programs* at 1176. The court in *Buckeye* determined that because "DRO stands in the stead of a governmental agency," and government agencies are exempt from the security requirement of Rule 56(c), "[t]he equitable circumstances of the present case support a conclusion that the posting of a bond is not warranted." *Buckeye Ranch* at 898.

DRRI requests this Court similarly exercise its discretion and waive the bond. DRRI is a non-profit agency and, as the P&A for a small state, it receives minimal federal funding to carry out its statutory mandates. A bond would impose a financial hardship on DRRI. As Defendant faces only a miniscule financial risk, and has millions of dollars at his disposable to mitigate any damage, waiver of the bond is justified.

CONCLUSION

DRRI has satisfied the requirements for a preliminary injunction: it is likely to succeed on the merits of its claims and is suffering irreparable harm; the balance of equities is in its favor, and the public interest will be served by granting DRRI a preliminary injunction. Therefore, DRRI respectfully requests that this Court issue a preliminary injunction against Defendant, requiring him to provide DRRI with access to all records of the ESH committees, to the full extent permitted by state and federal law. DRRI further requests that this Court waive the required bond.

This 25th day of August, 2022.

                                         Respectfully submitted,

                                        /s/ Brian Adae
                                        Brian Adae (RI State Bar No. 2536)
                                        DISABILITY RIGHTS RHODE ISLAND
                                        33 Broad Street, Suite 601
                                        Providence, RI 02903
                                        Phone: (401) 831-3150
                                        Fax: (401) 274-5568
                                        Email: badae@drri.org

                                        /s/ Kristine L. Sullivan
                                        Kristine L. Sullivan (NC Bar No. 35595)
                                        *Pro Hac Vice*
                                        DISABILITY RIGHTS RHODE ISLAND
                                        33 Broad Street, Suite 601
                                        Providence, RI 02903
                                        Phone: (401) 831-3150
                                        Fax: (401) 274-5568
                                        Email: ksullivan@drri.org

CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2022, the foregoing PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION was filed with the United States District Court for the District of Rhode Island using the CM/ECF system and sent by e-mail to the following recipients.

/s/ Kristine L. Sullivan

Recipients:

Thomas J. Corrigan Jr.
EOHHS Legal Counsel
Department of Behavioral Healthcare,
Developmental Disabilities & Hospitals
14 Harrington Road (Barry Hall)
Cranston, RI 02920
(401) 462-1628
Thomas.Corrigan@ohhs.ri.gov

Kate Breslin Harden
Chief, Legal Division
Department of Behavioral Healthcare,
Developmental Disabilities & Hospitals
14 Harrington Road (Barry Hall)
Cranston, RI 02920
(401) 462-0593
Kate.BreslinHarden@bhddh.ri.gov

Richard Charest
Director
Department of Behavioral Healthcare,
Developmental Disabilities & Hospitals
14 Harrington Road (Barry Hall)
Cranston, RI 02920
(401) 462-2339
Richard.Charest@bhddh.ri.gov